Harold Birns, J.
The petitioners, Village Voice, Inc., a weekly New York newspaper, and its editor Daniel Wolf seek an order quashing a subpoena duces tecum.
This subpoena duces tecum was issued, served, and made returnable November 1, 1971 at a time when indictments stemming from the Tombs riots, hereinafter referred to, were on the trial calendar of this court in Part 42 thereof. The indictments have since been marked ready for trial.
On November 5, 1970, approximately three months after the Tombs riots had ended, the petitioners published an article entitled “ Rebellion in the Tombs ”, allegedly written under the 1 ‘ by-line ’ ’ of Ricardo de Leon, an inmate, who, along with other *257 inmates, was indicted for kidnapping, coercion and other crimes allegedly committed during the riots.
In preparing the prosecution’s case, the District Attorney served the said subpoena duces tecum demanding the original manuscript of the said article by the defendant de Leon.
Petitioners, in moving to quash the said subpoena, contend that to require the production of the said manuscript infringes upon the freedom of the press as guaranteed by the First Amendment, and that ‘ ‘ if persons interviewed know that the information they supply to newsmen is subject to subpoena meaningful information simply will not be provided and, secondly, that section 79-h of the Civil Rights Law (L. 1970, ch. 615) confers upon newspapers and professional reporters a privilege to refuse to disclose or surrender the manuscript herein referred to.
From the affidavits submitted by petitioners, it appears that the said manuscript Was transmitted during the Tombs riots to Mrs. Mary Breasted, then a reporter for the Village Voice assigned to investigate and report on the disturbances in the city prisons during the summer and fall of 1970. Upon receipt of the manuscript it was edited and then published in the Village Voice as stated. Mrs. Breasted in her supporting affidavit states “ the manner in which I received the manuscript was confidential, and I am confident that the sole reason I was able to obtain the manuscript was that I was trusted by the inmates as a result of the relationship I had been able to establish and as a result of the publication of my earlier articles. There is no question in my mind that the inmates gave me information convinced that I would completely protect their confidence in using this information solely for the purpose of the publishing of news.”
The District Attorney, on the other hand, maintains that the issuance and service of the subpoena in no way infringes upon petitioners’ First Amendment rights, and that section 79-h of the Civil Rights Law establishes no privilege against disclosure or surrender of the said article, and that inasmuch as the article in question is published, authored and not anonymous, this court is' not confronted with representations of confidentiality or anonymity which the statute was intended to protect.
The District Attorney in his memorandum asserts that ‘ ‘ The letter or article in question is a confession which outlines the defendant’s responsibility and participation in the aforesaid crimes.”
*258 We are not concerned here with the plight, of a newspaper reporter or journalist confronted recently with a demand to disclose the secret source of information received or to reveal the identity of the anonymous author of a particular statement (Matter of Caldwell, 311 F. Supp. 358; Matter of Caldwell v. United States, 434 F. 2d 1081, cert. granted 402 U. S. 942 [1971]).
We are concerned with the question whether a newspaper or its reporter is privileged to withhold from a proper tribunal an alleged “ confession ” advertised as authored by a person under indictment.
In most cases involving a refusal to disclose secret sources or anonymous informers used by journalists as a basis for news stories, Federal and State courts have held repeatedly that the guarantee of the First Amendment is not absolute and the judicial compulsion of testimony is basic to the fair administration of justice (Garland v. Torre, 259 F. 2d 545, cert. den. 358 U. S. 910; Matter of Goodfader, 45 Hawaii 317; State v. Buchanan, 250 Ore. 244; Matter of Taylor, 412 Pa. 32).
In Garland v. Torre (supra) the Court of Appeals for the Second Circuit, speaking through Justice Stewart, sitting as a Circuit Justice, ruled that even if the newsman’s right to conceal his sources comes under the First Amendment, it must necessarily yield to the overriding ‘ ‘ public interest in the fair administration of justice ” notwithstanding the hypothesis that compulsory disclosure of confidential sources may act as “an abridgement of press freedom by imposing some limitation on the availability of news ” (Garland v. Torre, supra, pp. 548, 549). Justice Stewart particularly noted “that we are not dealing here with the use of the judicial process to force a wholesale disclosure of a newspaper’s confidential sources of news, "nor with a case where the identity of the news source is of doubtful relevance or materiality. * * * The question asked of the appellant went to the heart of the plaintiff’s claim. We hold that the Constitution conferred no right to refuse an answer.”
Here, the purported published “ confession ”, by an identified person, by its alleged nature, goes to the basic charge against the defendant de Leon.
It follows, then, that in the context of the afore-mentioned indictment, where no secret sources are involved, petitioners’ claim that its news gathering potential will be impaired if, by subpoena, they are required to produce the manuscript, is entitled to no constitutional protection.
*259 We are left, therefore, to consider the applicability of section 79-h of our Civil Rights Law. As far as applicable, it reads as follows:
“ § 79-h. Special provisions relating to persons employed by, or connected with, news media.
“ (a) Definitions. As used in this section, the following definitions shall apply:
“ (1) ‘ Newspaper ’ shall mean a paper that is printed and distributed ordinarily not less frequently than once a week, and has done so for at least one year, and that contains news, articles of opinion (as editorials), features, advertising, or other matter regarded as of current interest, has a paid circulation and has been entered at United States post-office as second-class matter.
& & =X=
“ (8) ‘ News ’ shall mean written, oral or pictorial information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare.
“ (b) Exemption of professional journalists and newscaster from contempt.
“Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network, shall be adjudged in contempt by any court, the legislature or other body having contempt powers, for refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication or to be published in a newspaper, magazine, or for broadcast by a radio or television transmission station or network, by which he is professionally employed or otherwise associated in a news gathering capacity.”
It will become apparent that the section is not free from ambiguity and requires analysis and construction.
Subdivision (b) reads: “no professional journalist or newscaster * * * shall be adjudged in contempt by any court * * * for refusing or failing to disclose any news or the source of any such news coming into his possession in the course of gathering or obtaining news for publication in a newspaper * * * by which he is professionally employed or otherwise associated in a news gathering capacity.”
The enactment of this section can be traced to those cases in our local jurisprudence where reporters have been jailed, *260 following contempt proceedings, for refusing to disclose the source of published information received in confidence (People ex rel. Mooney v. Sheriff of New York County, 269 N. Y. 291; Garland v. Torre, supra). “It is the statute alone which permits a newsman to remain silent in the face of judicial interrogation.” (37 Brooklyn L. Rev. 502, 509.)
• Section 79-h of the Civil Rights Law now adds a journalist’s privilege to the privileges recognized by our statutes. Privileged communications between attorney and client, physician and patient, and priest and penitent, all rest on the distinctive quality of confidence which permeates such relationships. “ As for the extension of the privilege not to divulge confidential communications when called upon to do so by authorized governmental bodies, the general posture of the courts and most commentators has been that since this privilege is an exception to the general rule which requires ‘ disclosure of all information by witnesses in order that justice may prevail ’, the correct tendency should be to restrict the scope of existing privileges rather than to create new ones. Therefore, because the courts have found that every person owes a duty to society to give what testimony he is capable of giving, the principle of privileged communications has not met with widespread approval; and where conceded, has been narrowly applied ” (37 Brooklyn L. Rev., supra, p. 504; see, also, State v. Donovan, 129 N. J. L. 478).
Petitioners contend that the definition of “ news ” contained in section 79-h affords the broadest construction possible, that the statute bars any demand for 1 ‘ news ’ ’, and that the authored manuscript is protected from the subpoena’s reach.
Hence, under petitioners’ view, a negative of a published photograph of an accident or of an arrest of a defendant or the tape of a news broadcast, would not be subject to a prosecutor’s subpoena, if a newspaper objected.
However, the phrase “ for refusing or failing to disclose any news or the source of such news coming into his possession ” is qualified by the phrase ‘ ‘ in the course of gathering or obtaining news for publication ’ ’, etc. This must refer to such information upon which published news stories are based or upon which such news stories are to rest. Undoubtedly it is the private information or the undisclosed source which is to be protected. Implicit in the section is the element of confidentiality. To adopt the broad view espoused by petitioners would mean that a newspaper had complete privilege under this statute to withhold any subject matter which it chose to classify as “ news ”,
*261 The memorandum of the Governor in approving section 79-h does not fortify this view. He stated: 11 The bill protects journalists and newscaster from charges of contempt in any proceeding brought under State law for refusing or failing to disclose information or sources of information obtained in the course of gathering news for publication ”. Again, “ The threat to a newsman of being charged with contempt and of being imprisoned for failing to disclose his information or its sources can significantly reduce his ability to gather vital information.”
Finally, “ This measure affords a stronger safeguard of the free channels of news communication than most existing legislation, by protecting newsmen from being compelled to disclose the information they gather, as well as the identity of their informants.” (1970 N. Y. Legis. Annual, p. 508.)
Thus, in order to raise successfully the claim of privilege, two essential elements must be established: first, the information or its sources must be imparted to the reporter under a cloak of confidentiality, i.e., upon an understanding, express or implied, that the information or its sources will not be disclosed ; and second, that the information or its sources must be obtained in the course of gathering of news for publication.
Undoubtedly, the manuscript is ‘ ‘ news ’ ’ within the statutory definition. Assuming further that it was news coming into a journalist’s possession “ in the course of gathering or obtaining news for publication ’ ’, it was not obtained under the cloak of confidentiality the statute was designed to protect. Hence, petitioners are not entitled to raise the claim of privilege.
One further point requires discussion. The representations by the Village Voice that the article in question was authored by Ricardo de Leon constitute a-waiver of any possible protection afforded by the statute. Publication of the article constituted a voluntary disclosure.
As was said in Matter of Taylor (412 Pa. 32, 44, supra) where the Supreme Court of Pennsylvania construed á statute creating a similar privilege for journalists: “We therefore hold that a waiver by a newsman applies only to statements made by the informer which are actually published or publicly disclosed and not to other statements made by the informer to the newspaper. ’ ’
And inasmuch as the defendant de Leon has acquiesced in the publication of his manuscript, there can be no basis for petitioners’ claim that to respond to the subpoena would, in effect,. “ invade the autonomy of the press by imposing a gov *262 ermnental function upon them ” (see Caldwell v. United States, 434 F. 2d 1081, 1086, supra).
Although this court is not now confronted with a motion to punish for contempt, this analysis of section 79-h has been necessary in order to rule on the present motion to quash the subpoena duces tecum. And although the manuscript is now said to be in the possession of Mrs. Breasted, neither the Village Voice nor its editor has sought to use that ground as a basis for the relief sought. Whether the trial court will reach a question of contempt will in turn depend upon such evidentiary questions relating to the manuscript as possession, materiality, relevance and competency, as well as connecting it with the purported author, Ricardo de Leon.
The motion to quash the subpoena duces tecum is denied.