Oak Beach Inn Corp. et al., Respondents, v Babylon Beacon, Inc., Doing Business as Babylon Beacon Newspaper, et al., Appellants.

Second Department, March 7, 1983

APPEARANCES OF COUNSEL

*Steven M. Schapiro* for appellants.

*Patrick Kevin Brosnahan, Jr. (Patricia S. Muhlrad* of counsel), for respondents.

OPINION OF THE COURT

*Per Curiam.*

■ Plaintiffs ran an advertisement in the defendant newspaper lamenting the failure of the Suffolk County Police Department to take action to protect the public from a dangerous curve on Montauk Highway. Defendants subsequently published a letter to the editor which accused plaintiffs of creating their own hazardous conditions by, *inter alia,* serving liquor to obviously intoxicated people, violating the fire code, blocking roads, and causing a parking problem. The name of the letter's author was not published. Plaintiffs then commenced the instant defamation action, and thereafter sought discovery to learn the name of the letter writer so that the writer could also be brought into the action as a defendant. Defendants refused to reveal the requested information, claiming protection from this disclosure under section 79-h of the Civil Rights Law (the Shield Law). Defendants' refusal to disclose the name of the letter writer and produce a copy of the letter has resulted in plaintiffs obtaining a conditional order striking defendants' answer. Special Term, in conditionally granting plaintiffs' motion to strike defendants' answer, reasoned that the Shield Law was only applicable in contempt proceedings. We do not agree, and, accordingly, plaintiffs' motion to strike the answer should be denied.

The privilege afforded professional journalists from revealing news or the source of news coming into their possession during the course of gathering or obtaining news for publication has been applied in the context of defamation actions (*Greenberg v CBS Inc.,* 69 AD2d 693; *Hennigan v Buffalo Courier Express Co.,* 85 AD2d 924) and motions to quash subpoenas (*Matter of Andrews v Andreoli,* 92 Misc 2d 410; *Matter of Wolfe v People,* 69 Misc 2d 256, affd 39 AD2d 864). As noted in *Matter of Andrews v Andreoli* (*supra,* p 417), although the Shield Law is cast in

negative terms to shield the newsman from contempt, it "conceptually rests on a firm base of confidentiality". The salutary purposes of the Shield Law would be unduly restricted if journalists invoking the privilege were subjected to large monetary judgments in civil actions upon their refusal to reveal news sources simply because a contempt proceeding was not involved. Special Term erred in refusing to consider the potential applicability of the privilege afforded by the Shield Law in this defamation action.

■ With regard to the merits of the confidentiality claim, the only further serious challenge raised by plaintiffs concerns the question of whether a letter to the editor qualifies as "news". Section 79-h (subd [a], par [8]) of the Civil Rights Law defines news as "written * * * communication concerning local * * * events or other matters of public concern or public interest or affecting the public welfare". The letter in issue, concerning allegedly unsafe conditions created by plaintiffs, falls squarely within this language (see *Davis v Davis,* 88 Misc 2d 1). Furthermore, many people read the letters to the editor column for the same reasons they read any other news column in the paper — to learn what is happening around them, and the reactions of other people to these events. The beneficial purposes served by the Shield Law would be unnecessarily restricted by removing the letters to the editor column from its aegis. It is in the public interest to hold that this column comes within the purview of "news".

Plaintiffs will now be unable to initiate an action against the author of the letter, but in weighing the competing values at issue, the privilege must prevail (see, generally, *Matter of Langert v Tenney,* 5 AD2d 586, mot for lv to app den 6 AD2d 777, app dsmd 5 NY2d 875). This is simply the price that must be paid in a society which seeks to encourage and protect an aggressive and unintimidated press. Plaintiffs can of course still pursue their action against the present defendants. In addition, defendants' reliance on the shield of confidentiality will result in the imposition of restrictions on their ability to make use of the protected source in defending the action (*Greenberg v CBS Inc.,* 69 AD2d 693, *supra*).

Defendants were not required to disclose privileged matter (CPLR 3101, subd [b]), and it was therefore error to impose sanctions upon them for their refusal to disclose this privileged matter. Accordingly, the orders under review which directed disclosure and conditionally struck their answer must be reversed. Special Term failed to address the merits of defendants' cross motion for summary judgment. Although the order denying the cross motion without prejudice to renew was appealable as of right (see *Samuels v Ames Realty Corp.,* 79 AD2d 651; *Sherman v Morales,* 50 AD2d 610), the appropriate course is to remit this matter to Special Term to address itself to the merits of the cross motion.

TITONE, J. P., GIBBONS, THOMPSON and NIEHOFF, JJ., concur.

Order dated October 29, 1981, reversed insofar as appealed from, and, upon reargument, order dated October 6, 1981 vacated and motion to compel disclosure denied.

Order dated April 26, 1982, reversed, plaintiffs' motion to strike defendants' answer denied and matter remitted to the Supreme Court, Suffolk County, to consider defendants' cross motion for summary judgment.

Defendants are awarded one bill of $50 costs and disbursements.