Leroy J. POTTS, d/b/a Town and Country Mobile Homes, Defendant-Appellant,

v.

Ray OFFUTT and Janet Offutt, Plaintiffs-Appellees.

No. 3–185A2.

Court of Appeals of Indiana, Third District.

Aug. 15, 1985.

---

James R. Byron, Thorne, Grodnik & Ransel, Elkhart, for defendant-appellant.

John O. Worth, Clarkson & Worth, Rushville, for plaintiffs-appellees.

HOFFMAN, Judge.

Defendant-appellant Leroy Potts d/b/a Town & Country Mobile Homes (Potts) appeals an adverse judgment rendered against him in favor of plaintiffs-appellees Ray and Janet Offutt (Offutts). The Offutts, as purchasers, brought suit against Potts for breach of a contract for the sale of a new mobile home. The trial court awarded the Offutts damages for the difference between the contract price and the amount which they ultimately paid for the same mobile home from another dealer, D & J Mobile Homes.

The evidence most favorable to the trial court's decision reveals that the Offutts attended a mobile home showing in South Bend, Indiana at which Potts, a mobile home dealer, displayed several homes. The Offutts determined that they were interested in one particular home Potts was selling. Potts' salesman, Roland Hintz,[1] discussed the purchase of the home with the Offutts. Potts participated in or was present during portions of the discussion.

---

1. Hintz was originally named as a defendant in the case. Prior to trial, summary judgment was granted removing Hintz as a defendant.

A price of $23,000.00 was quoted to the Offutts, who requested a $12,000.00 trade-in allowance for their mobile home as a partial down payment. Hintz completed portions of a form contract designated as a "Purchase Agreement." The $23,000.00 total price along with the $12,000.00 trade-in allowance were listed on the document. The document reflected a balance due of $11,000.00. The Offutts asked Hintz to sign the document, whereupon they also signed.

The Offutts tendered a $500.00 down payment; however, Hintz stated that a much smaller down payment would suffice. A $20.00 deposit was agreed upon.

According to the Offutts, a tentative delivery date of the following Wednesday was established, and they were told to make preparations for their new mobile home. The Offutts curtailed a trip to Michigan and returned to their home in Connersville, Indiana to prepare the site. In addition to moving into a motor home, the Offutts incurred a $200.00 rental expense to store their furniture.

When the mobile home was not delivered as planned, the Offutts telephoned several times to inquire as to its whereabouts. Although unsure who they spoke to each time, Mr. Offutt testified that on one occasion he spoke to someone who identified himself as the owner of Town & Country Mobile Homes. The Offutts testified that they were given various reasons for the failure of delivery.

Potts testified that he could not allow the $12,000.00 trade-in value for the Offutts' mobile home based upon an appraisal of the home by an employee who viewed it from the outside only. Potts then had the exact mobile home the Offutts had chosen delivered to D & J Mobile Homes in Richmond, Indiana, from whom the Offutts purchased it for approximately $28,000.00. The purchase agreement with D & J specifically noted that certain items, which had been in the mobile home originally, were included in the price. The Offutts were given a $12,000.00 trade-in allowance for their mobile home by D & J.

The Offutts then brought this suit to recover the additional cost of the mobile home and for consequential damages incurred. On appeal Potts raises three issues for review. As restated, those issues are:

(1) whether Potts had a right to inspect and reject the mobile home offered as a trade-in, after the purchase agreement was signed indicating a $12,000.00 trade-in allowance for the home;

(2) whether the trial court abused its discretion in not allowing an amendment to a pre-trial order, wherein Potts stipulated that the contract was signed by Roland Hintz on behalf of Potts; and

(3) whether the trial court properly assessed the damages awarded to the Offutts.

■ The trial court in the instant case made no specific findings of fact or conclusions of law. On appeal, this Court will presume general judgments to be based upon findings which are supported by the evidence, and must affirm if the decision of the trial court can be sustained on any legal ground. *General Plating & Engineering, Inc. v. Syn Indus.* (1985), Ind. App., 472 N.E.2d 1290.

At trial, the purchase agreement signed by Hintz and the Offutts was introduced into evidence. One provision in the agreement states,

"If the used trailer or mobilehome is not delivered to the dealer at the time of original appraisal, and if later, on its delivery, it appears to the dealer there have been material changes made in the furnishings or accessories thereof, or in its general physical condition, the dealer shall then have the right to make a reappraisal. This later appraisal value will then determine the allowance to be made for such used trailer, mobilehome or other vehicle."

Potts argues that the above language is unambiguous and when coupled with the notation on the face of the agreement that the $20.00 paid by the Offutts was a "hold deposit," demonstrates that Potts was free

to make an original appraisal and reject the trade-in, even after the agreement was signed. Further, Potts maintains that he was actually "purchasing" the Offutts' old home and that he is entitled to a buyer's rights of inspection and rejection as provided in IND.CODE §§ 26–1–2–513 and 26–1–2–601.

The terms of a contract are ambiguous if reasonable minds could honestly differ as to their meaning. *Indiana-Kentucky Elec. Corp. v. Green* (1985), Ind. App., 476 N.E.2d 141. Normally a contract is construed most strongly against the drafting party. *Wabash Ford Truck Sales v. Ford Motor Co.* (1984), Ind.App., 472 N.E.2d 611. The language relied upon by Potts is susceptible of several interpretations. At best, the language appears to allow a modification of the contract price under certain circumstances; namely, damage or alteration to the trade-in subsequent to the original appraisal. The trial court's implicit finding that once the trade-in amount was listed on the form and the agreement was signed, the only right to inspect the mobile home would be the reappraisal for material changes to the home, must be sustained. Thus, any opportunity to alter the $12,000.00 appraisal amount absent some change in the home's condition, was foreclosed once the trade-in amount was agreed upon and entered on the form.

Testimony by Hintz that to the best of his knowledge Potts approved the $12,000.00 trade-in allowance bolsters a finding that Potts was bound by the agreement and had no right to later make an original appraisal of the mobile home.

Potts advances an alternative argument that he should be considered the purchaser of the trade-in mobile home, and should acquire a buyer's rights to inspect and reject non-conforming goods as found in IND.CODE §§ 26–1–2–513 and 26–1–2–601 respectively. In *Home Indemnity Co. v. Twin City Fire Insurance Co.* (7th Cir. 1973), 474 F.2d 1081, the Court stated that with regard to a sales transaction involving a trade-in,

"[e]ach party to the transaction is the 'seller' of the goods it is to deliver. U.C.C. § 2–304(1), Ind.Code § 26–1–2–304(1) (1971), provides: 'The price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer.' " (Emphasis in original.)

474 F.2d at 1084.

Although not addressed by the Court in *Home Indemnity, supra,* the logical implication of the statute is that the recipient of the trade-in mobile home is a buyer, and may be entitled to buyer's rights as provided by statute. If Potts acquired such rights, the record shows that he did not comply with the statute governing the procedure for properly rejecting goods.

IND.CODE § 26–1–2–602(1) states that "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." This Court has determined that an effective rejection requires timeliness and reasonable notification communicated by the buyer to the seller. *Hahn v. Ford Motor Co., Inc.* (1982), Ind.App., 434 N.E.2d 943.

Assuming that vacating the trade-in mobile home and readying the site for the new mobile home constituted tender of the trade-in, Potts neither timely rejected, nor reasonably notified the Offutts of the rejection. There exists no evidence in the record that Potts ever explained to the Offutts that he was rejecting the trade-in home. Relative to the course of events which occurred after the mobile home show, Mr. Offutt testified as follows:

"Q After these conversations did you ever meet with Town and Country personally?

A No.

Q Did they ever deliver that mobile home to you?

A No.

Q How long did you wait?

A   It was approximately three weeks or over.  The last time that I called they said Connersville was too far away.

\* \* \* \* \* \*

Q   The last time you talked to Town and Country, you called them.  Is that correct?

A   Yes.

Q   And did you ask to speak to a certain person?

A   When I asked the fellow that came on, he said he owned Town and Country.

\* \* \* \* \* \*

Q   Did he identify himself?

A   He said that he owned Town and Country.

Q   What did he say to you?

A   He said he wasn't going to deliver the home because Connersville was too far away.

Q   Was that the last you heard from them?

A   Yes."

Accordingly, the trial court could have found that the right to reject the trade-in, which may have accrued to Potts, was not properly exercised.  Therefore, Potts' contention that his status as a buyer allowed inspection and rejection of the trade-in must fail, because if available the right of rejection was not properly exercised.

■   Resolution of Potts' second issue, amendment of the pretrial order, requires consideration of Ind.Rules of Procedure, Trial Rule 15(B) and Trial Rule 16(J).  The relationship between the two rules was discussed by this Court in *Col. Mtg. Co. of Ind. v. Windmiller* (1978), 176 Ind.App. 535, 376 N.E.2d 529.  This Court stated that under T.R. 16(J) the trial court is vested "with discretion to permit modifications of the pre-trial order.  It may also, in its discretion, deny such amendments, and in either event, appellate review is limited to ascertaining whether the court committed an abuse of discretion."  176 Ind.App. at 542, 376 N.E.2d at 534.  The footnote to the above passage states,

"TR 15(B) regarding amendments to conform to the evidence is not at odds with the foregoing.  The purpose of TR 15(B) is to permit amendment where issues not contained in the pre-trial order are in fact litigated by express or implied consent.  While it also provides for amendment although an objection has been made that proffered evidence is outside the issues, the court has discretion to grant such amendments; and should not do so where the objecting party establishes that amendment would prejudice him in maintaining his action or defense."

176 Ind.App. at 542, 376 N.E.2d at 534.

Potts contends that his stipulation that "the defendant signed the [purchase agreement] attached to plaintiffs' complaint as Exhibit 'A'," incorporated into a pre-trial order, should have been amended by the trial court once Mrs. Offutt admitted knowledge that Potts had to review any deals made by Hintz.  Potts contends that by admitting that Hintz did not have authority to enter into the contract, the Offutts introduced the issue of the validity of the contract into the case.  However, testimony by the Offutts and Hintz disclosed that Hintz sought and was apparently granted authority to enter into the agreement.

Potts is correct in asserting that Mrs. Offutt acknowledged the necessity for Hintz to obtain approval of the transaction.  However, her further testimony that Potts approved the transaction, together with prior similar testimony by Hintz, supplied the trial court with sufficient evidence to determine that the amendment should not be granted because the validity of the agreement was not introduced into the case.  Consequently, a contention by Potts that the amendment was mandatory pursuant to Trial Rule 15(B), because the issue was tried by express or implied consent of the plaintiffs, must fail.

The trial court was exercising its discretion when it determined that the pre-trial order should not be amended.  *Col. Mtg. Co. of Ind., supra.*  That determination may only be reversed for an abuse of dis-

cretion, *supra.* Because the record supports the trial court's decision, no abuse of discretion was committed and this Court must uphold the trial court's denial of the amendment.

■ The final issue on appeal is whether the trial court's determination of damages was proper. A damages award does not require any specific degree of certainty, so long as the amount awarded is supported by the evidence and is not based upon conjecture or speculation. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind. App., 467 N.E.2d 433. A party injured by a breach of contract should be compensated to the extent of the benefit lost, but should not be placed in a position better than before the breach. *Downing v. Dial* (1981), Ind.App., 426 N.E.2d 416.

When assessing damages occasioned by the breach of a sales transaction, IND. CODE § 26–1–2–713 is applicable to determine the buyer's damages upon failure of delivery. Under the statute the buyer is entitled to the difference between the market price when the buyer learned of the breach and the contract price, plus any incidental and consequential damages, but less any expenses saved as a result of the seller's breach.

■ The evidence presented in the instant case shows that the market price[2] of the mobile home at the time of the breach was approximately $28,000.00; $5,000.00 more than the contract price. Further, the Offutts suffered $200.00 in consequential damages when they rented a truck to remove and store their furniture, in anticipation of the delivery of the new mobile home. The record reveals no evidence as to any expenses saved by the Offutts as a result of the breach.

Potts argues that the Offutts paid more for the same mobile home purchased from D & J because additional items were included; specifically, central air conditioning, disposal, dishwasher, carpets, drapes and spreads. Evidence in the record demonstrates that the mobile home was equipped with all of the above items when the Offutts viewed it in South Bend. Potts testified that he had not intended to sell the mobile home with the central air conditioning, and that the disposal, drapes, and carpeting would have been included at an additional cost. In rebuttal, Mr. Offutt testified that the sale price included everything in the mobile home except the furniture, which also was not included in the purchase of the mobile home from D & J.

Had Potts not intended to sell the home as viewed, the Offutts should have been informed of all items to be excluded, not just the furniture. Accordingly, the trial court's award of $5,200.00 in damages is supported by the record and appears to represent the Offutts' benefit of the bargain as required by *Downing, supra,* and IND.CODE § 26–1–2–713.

Finding that the trial court's decision is based upon evidence within the record, and that no abuse of discretion was committed by the court below, the judgment is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.

---

2. Market price is normally calculated with reference to an arm's length bargain between a willing buyer and a willing seller, neither being under compulsion to buy or sell. *Sikora v. Barney et al.* (1965), 138 Ind.App., 686, 207 N.E.2d 846.