**In re SUBPOENA DUCES TECUM TO
John STEARNS, Appellant
(Petitioner Below),**

v.

**Helen J. ZULKA, et al., Appellees
(Respondents/Defendants Below).**

**Colby VOLLMER, et al.,
Plaintiffs Below,**

v.

**Helen J. ZULKA, et al., Appellees
(Defendants Below).**

No. 3–785 A 185.

Court of Appeals of Indiana,
Third District.

Feb. 26, 1986.

W. Paul Helmke, Jr., Linda Peterson Powell, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellant.

Jerome J. O'Dowd, Fort Wayne, for appellees.

STATON, Presiding Judge.

John Stearns appeals a trial court order denying his motion to quash a subpoena duces tecum issued by the defendants in a personal injury action to which Stearns was not a party. Stearns, a newspaper photographer for the Fort Wayne News-Sentinel claimed a privilege against compulsory disclosure of information obtained in the course of his employment with the newspaper. The court, in a general judgment, overruled Stearn's motion to quash and ordered Stearns to produce, within fourteen days, photographs taken at the scene of the accident. Stearns presents these issues for review:

I. Whether the trial court erred in overruling the Motion to Quash, without first finding that the photographs were relevant; that there were no alternative sources for the information to be obtained from the photographs and that the defendants had a compelling interest in the production of the photographs.

II. Whether the trial court erred in ordering Stearns to produce the photographs when the subpoena duces tecum was issued in connection with a summary judgment hearing which was continued and no Trial Rule 34(C) request was filed with the subpoena.

On May 29, 1985 Helen Zulka and others (Zulka), defendants in a personal injury auto accident, served a subpoena duces tecum on Stearns ordering him to appear and testify for defendants on June 10, 1985 at a hearing on defendants' motion for summary judgment. Stearns was ordered to bring with him:

> "Copies of all photographs taken by you on September 8, 1982 at the scene of an automobile-pedestrian accident in the 2500 block of South Wayne Avenue, Fort Wayne, Indiana, at approximately 8:15 A.M. in which a child was struck by an automobile."

On June 3, on Zulka's motion, the summary judgment hearing was continued without date. The same day Stearns filed his motion to dismiss, quash and/or modify the subpoena duces tecum. The court set a hearing on Stearn's motion for June 12, 1985. The record does not contain a transcript of the hearing and the order book entry for June 12 is as follows:

> "Defendants appear by counsel. John Stearns, non-party, appears by counsel. Submitted on John Stearns' motion to dismiss, quash, and/or modify subpoena duces tecum. Argument of counsel heard. The Court being duly advised in the premises, now overrules John Stearn'[s] motion to quash and orders John Stearns to produce photographs requested by defendants' attorney, Jerome J. O'Dowd, within fourteen (14) days, at defendants' costs."

Before reaching the merits of Stearn's claim of privilege, we address the question of whether the subpoena duces tecum was an adequate vehicle for obtaining production of the photographs once the summary judgment hearing had been continued.

■ Ind.Rules of Procedure, Trial Rule 34 permits a party to an action to obtain documents or other tangible items from either another party or a non-party and sets forth the procedures for requesting the items, for objecting to such a request and for enforcing the request. When a party seeks production from another party the rule requires only a request setting forth the items to be inspected and specifying a reasonable time, place and manner for the inspection. The rule contemplates a cooperative atmosphere between parties without resort to the courts. A motion is not required. *See* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2207. Similarly subsection (C), under which the Indiana rule sets forth the procedure for obtaining items from a non-party, does not speak of a motion, but only a request. Such a request directed to a non-party, however, shall be "included in or with a subpoena served upon such witness or person." TR. 34(C). The request must set forth the same matters as a request to a party—items to be inspected and a reasonable time, place and manner of making the inspection. TR. 34(B). The subpoena duces tecum served on Stearns fairly apprised him of what was requested and set forth when and where—the in-court hearing—he could comply with the request. There was no necessity for a separate motion apprising him of the same facts, as Stearns argues, nor does the authority cited by Stearns support that position. The subpoena did not offer costs associated with supplying the requested photographs, but the trial court's order cured any defect on that point by ordering Zulka to bear the costs.

■ The relationship between Rule 34 and Rule 45, governing subpoenas, is specifically recognized in the provision of subsection (C) which permits the witness to move to quash the subpoena as permitted by Rule 45(B). We see no reason to read these two rules in isolation from one another. Rule 45 merely sets out in greater detail the requirements for subpoenas issued under a variety of circumstances, including the production of tangible items as well as for taking depositions and attend-

ing a hearing or trial. The subpoena directed to Stearns served a dual purpose in requesting him to attend the hearing and bring with him the photographs. Under either Rule 34 or Rule 45 the procedure was adequate to obtain production of the photographs.

## II.

### Privilege

The majority of Stearns' brief is devoted to his claim that as a newsgatherer he has a qualified privilege against compulsory disclosure of any information acquired in the course of his employment and that the privilege may not be overcome unless Zulka first makes a showing that the information sought is relevant, that there is no alternative source for the information and that Zulka's need for the information is compelling.

■ When reviewing a general judgment this Court will presume the judgment to be based upon findings which are supported by the evidence and we must affirm if the decision of the trial court can be sustained on any legal ground. *Potts v. Offutt* (1985), Ind.App., 481 N.E.2d 429, 431. In the instant case we must first determine whether the showing urged by Stearns is required and then whether the evidence would support findings that such a showing has been made.

The newsgatherer's privilege has been often litigated in the courts over the years and as a result of the controversy many states, including Indiana,[1] have passed shield laws which, in general, provide an absolute privilege[2] against revealing confidential sources of information procured in the course of employment for a news reporting entity. Stearns does not, however, rely on the Indiana Shield Law as the source of his privilege. The shield laws in some jurisdictions have been given a narrow reading, restricting their application to the disclosure of the names of confidential informants as opposed to disclosure of the information itself. *See Branzburg v. Pound* (1970), Ky., 461 S.W.2d 345; *Forest Hills Utility Co. v. City of Heath* (1973), 37 Ohio Misc. 30, 302 N.E.2d 593. *People v. Wolf* (1972), 69 Misc.2d 256, 329 N.Y.S.2d 291, *aff'd.* 39 App.Div.2d 864, 333 N.Y.S.2d 299; *Dumez. v. Houma Municipal Fire & Police Civil Service Board* (1976), La.App., 341 So.2d 1206. The Indiana courts have not addressed the question of whether IC 34–3–5–1 extends to the information itself or to information which was not received under the cloak of confidentiality.

■ Stearns urges instead that we consider such non-confidential information protected by a qualified privilege based on the First Amendment to the United States Constitution. In *Branzburg v. Pound* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 the United States Supreme Court firmly established that there is no absolute privilege conferred upon newsmen by the First Amendment to refuse to reveal their sources of information in legal proceedings in which they are subpoenaed. *Branzburg* dealt specifically with criminal proceedings, leaving open the question of whether a

1. IC 34–3–5–1. Newspapers, television and radio stations—Press Associations—Employees and representatives—Immunity.—Any person connected with, or any person who has been so connected with or employed by, a newspaper or other periodical issued at regular intervals and having a general circulation, or a recognized press association or wire service, as a bona fide owner, editorial or reportorial employee, who receives or has received income from legitimate gathering, writing, editing and interpretation of news, and any person connected with a licensed radio or television station as owner, official, or as an editorial or reportorial employee who receives or has received income from legitimate gathering, writing, editing, interpreting, an-

nouncing or broadcasting of news, shall not be compelled to disclose in any legal proceedings or elsewhere the source of any information procured or obtained in the course of his employment or representation of such newspaper, periodical, press association, radio station, television station, or wire service, whether published or not published in the newspaper or periodical, or by the press association or wire service or broadcast or not broadcast by the radio station or television station by which he is employed.

2. *See Jamerson v. Anderson Newspapers, Inc.* (1984), Ind.App., 469 N.E.2d 1243, 1246.

qualified privilege would be available to a non-party newsgatherer in civil actions.

Where confidentiality is involved the courts have recognized that compelled disclosure of confidential sources threatens a journalist's ability to obtain information that is made available only on a confidential basis, and that the effect of such disclosure upon future investigative reporting threatens freedom of the press and the public's need to be informed. *Baker v. F & F Investment,* 470 F.2d 778, 782 (2nd Cir. 1972). The constitutional right involved must yield, however, to a paramount public interest in the fair administration of justice. *Garland v. Torre,* 259 F.2d 545 (2nd Cir.1958). Thus in *Garland,* where actress Judy Garland sued Columbia Broadcasting System for defamation based upon a newspaper column attributing certain statements to a "network executive," the Court denied the columnist's claim of privilege against revealing the name of the executive who had provided her with the information. The Court pointed out that while the plaintiff might have been able to learn the identity of the informant, her reasonable efforts in that direction had been unsuccessful. In view of the fact that the claim was not patently frivolous, it was obvious that the information sought was material and relevant. *Id.* at 551.

Relying upon the *Garland* formulation the Court in *Carey v. Hume,* 492 F.2d 631 (D.C.CIR.1974) agreed that in civil litigation the Court should look at the facts on a case by case basis, weighing the need for the testimony in question against the claims of the newsman that the public's right to know is impaired. *Id.* at 636. The important factor in *Carey,* as in *Garland,* was whether the information sought went to the heart of the party's action. In *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433 (10th Cir.1977) the Court ruled that the trial court erred in denying an investigative reporter's motion for a protective order to block revelation of his news sources and confidential information. The record did not disclose anything as to the nature of the evidence sought, as to the effort to obtain it from other sources and as to its

relevance. The Court held that the trial court must evaluate these factors before making its decision. *Id.* at 438.

The privilege against disclosure, qualified by these balancing factors, has been recognized where the information sought was not necessarily confidential and extended to the information or resource materials themselves. The Court in *United States v. Cuthbertson,* 630 F.2d 139 (3rd Cir.1980) said:

"We do not think that the privilege can be limited solely to protection of sources. The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes. Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege." (Citations omitted).

630 F.2d at 147. In *Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975), the Court pointed out that the plaintiff's allegation that no confidential source was involved in the sought after documents was utterly irrelevant to the "chilling effect" that enforcement of the subpoena would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is "equally as invidious" as the compelled disclosure of confidential informants. *Id.* at 1303. The Court emphasized that the plaintiff had shown no compelling interest to justify compelled disclosure of any information. *See also Democratic National Committee v. McCord,* 356 F.Supp. 1394 (D.C.Dist. 1973); *Altemose Construction Co. v. Building & Construction Trades Council,* 443 F.Supp. 489 (E.D.Pa.1977).

A Texas case nearly identical to the case at bar is *Suede Originals v. Aetna Casualty* (1982), Tex.Dist., 8 Media L. Reptr. 2565 in which an insurance company sought to compel a non-party newspaper to produce published and unpublished photographs of a fire. The Court held that when a non-party newsgatherer claims a privilege the

burden shifts to the discovering party to establish all elements of the following three part test:

   (a) the material sought is highly relevant,

   (b) there is a compelling need for the information sufficient to override the First Amendment privilege, and

   (c) the party has been unsuccessful in securing the information from other sources.

Holding that the insurance company had failed to show that it had exhausted all alternative sources for the information, the Court said:

"The job of a newspaper is to gather as much information as it possibly can with respect to all facets of activity of interest and importance to readers. If it does its job well, it logically will be the repository of much information concerning controversial events which take place in the area which it serves. If the price of doing its job well, however, is to be a repeated role as the resource for those seeking information of only speculative value to themselves, coupled with a governmental command that they play that role, the effect will be severe. To make the press, in effect, the investigative arm of every civil litigant ... inevitably will constrict the flow of information to the press, and ultimately to us all."

*Id.* at 2566.

We find the foregoing reasoning highly persuasive and even though in the instant case the burden on Stearns' First Amendment liberties may not appear particularly onerous at first glance, we deem it essential that the balancing of that interest against Zulka's need for the information be based upon the factors enumerated by the many courts which have previously addressed this question. That is, are the photographs sought by Zulka clearly material and relevant to the defense of the underlying action; is there a compelling need for them in the sense that they are critical to the fair determination of the cause; has Zulka exhausted all other sources for the same information such as parties or witnesses who would be able to describe the accident scene and the conditions at the time of the accident?

Upon the record before us it is impossible to tell whether the trial court gave proper consideration to the foregoing factors. The court made no findings as to the materiality or relevance of the photographs or to Zulka's compelling need for them. Nor is there any indication that they contain information otherwise unavailable. The only evidence included in the record is the affidavit and police report of the investigating officer, which, if anything, suggests that he could describe the accident scene and the conditions present. The fact that *he* took no photos at the scene is not dispositive. Moreover, as Stearns correctly points out, the memorandum and mere assertions of counsel for Zulka are not evidence which the trial court may consider in reaching its decision. For these reasons we reverse the trial court's order denying Stearn's motion to quash and ordering him to produce the photographs and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

I read today's opinion as recognizing upon constitutional grounds a qualified privilege protecting news reporters from disclosing evidence they possess which is relevant to the determination of a civil or criminal trial unless it is shown:

   (a) that the information is clearly material and relevant;

   (b) that there is a "compelling need" for the evidence; and

   (c) that the party seeking the evidence has exhausted all other sources for the same information.

I dissent to the view that the First Amendment creates any such privilege.

Initially, a distinction recognized by the majority should be noted. The cases deal-

ing with a privilege to protect the press quickly divide themselves into those concerning information gathered by the press and those concerning the sources of that information.

As to the latter category, Indiana as a matter of state statutory law has provided a privilege against disclosure. IC 34–3–5–1. As I read that statute, its application is plainly and clearly limited to nondisclosure of the sources of a reporter's information. It has no application to the present proceeding.

The Supreme Court considered whether the constitution afforded privilege in *Branzburg v. Hayes* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626.

Some uncertainty is created by Justice Powell's concurring opinion written "to emphasize ... the limited nature of the Court's holding." His concurrence stresses that "harassment" of news reporters will not be tolerated. 408 U.S. at 710–11, 92 S.Ct. at 2671–72. Also, the opinion does not speak more broadly than the criminal prosecution context which was before the court.

The plurality opinion authored by Justice White considers, in the context of two grand jury investigations concerning potential criminal prosecutions, whether the First Amendment affords a privilege to newsmen (a) concerning information they possess about the commission of a crime, or (b) concerning the sources of that information.

As the Court recognized, a more appealing argument can be made for the protection of a newsman's sources. Yet the plurality rejected a constitutional privilege phrased like the one this court announces today as to the disclosure of such *source* information. As to information possessed by the reporter based upon what the reporter had witnessed, the Court determined that no substantial federal question was even presented. 408 U.S. at 693.

It should hardly be necessary to state my indorsement of freedom of the press, or that the legislature may quite properly en-

act legislation such as IC 34–3–5–1. I deem it, however, a principle of equal importance to the preservation of our freedom and system of government that the general rule should be that "the public ... has a right to every man's evidence." 408 U.S. at 689, 92 S.Ct. at 2661.

To impose upon newsgatherers the obligation to produce relevant and material evidence which they possess, subject to the rules of procedure and the protections they afford, imposes no greater burden on the press than the law imposes on policemen, physicians, or the public in general. Thus, it is no more than an "incidental burdening" (408 U.S. at 683) that does not impinge upon First Amendment rights.

Here there was no suggestion that the photographs were not relevant and material or that the form of discovery was unduly burdensome. I would affirm the trial court.