**In re ORDER FOR IN CAMERA REVIEW.**

**WTHR–TV, Appellant,**

v.

**STATE of Indiana, Appellee,**

v.

**Zelda MILAM, Appellee.**

No. 49A05–9702–CR–75.

Court of Appeals of Indiana.

June 23, 1997.

Michael A. Wilkins, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Kay A. Beehler, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

WTHR–TV appeals the trial court's order that it produce unaired footage of a murder story for in camera review. WTHR raises the following restated issue: Does the First Amendment protect the media from disclosing unaired footage when a criminal defendant requests such materials to aid the preparation of a defense?

### FACTS AND PROCEDURAL HISTORY

On January 1, 1997, Billie Milam (Billie) was found dead in the office of his auto sales business. Billie's wife, Zelda Ruby "Kay" Milam (Zelda) was subsequently charged with Billie's murder. Zelda made a pretrial motion requesting that the trial court order WTHR to preserve and produce all news footage regarding Billie's death, and regard-

ing the questioning, apprehension, arrest and arraignment of Zelda.[1]

After the trial court granted the order, WTHR moved that the court reconsider the order on the basis that it did not receive notice of the motion until after it had been granted and on the basis that the order violated WTHR's First Amendment privilege not to disclose materials not previously aired.[2] Zelda responded to the motion to reconsider by requesting that the court review the requested materials in camera "to make a determination as to whether the unaired/unedited portions of the tapes in question are discoverable, to Defendant, whether they contain relevant and/or exculpatory information regarding this case, and to thereafter make the appropriate order." R. 28. WTHR once again asserted that disclosing the unaired footage would violate its First Amendment privilege, even if the disclosure were limited to an in camera review. The trial court granted Zelda's motion for an in camera review, but stayed the order pending resolution of this appeal.

### THE FIRST AMENDMENT

WTHR asserts that "journalists have a qualified constitutional privilege against the disclosure of materials not previously published or broadcast [which] arises out of the free press provisions of the First Amendment."[3] Brief of Appellant WTHR–TV at 6. WTHR further argues that "[u]nder the privilege, journalists and other news[-]gatherers cannot be compelled to disclose resource materials, notes, audio and video out[-]takes, and other materials not previously published or broadcast until the person seeking disclosure can satisfy a three[-]pronged test." *Id.*

Pursuant to the three-pronged test,[4] the journalist would be compelled to disclose the materials only after a showing that "(1) the materials sought are clearly material and relevant to the underlying action; (2) there is a compelling need for the materials in the sense that they are critical to the fair determination of the cause; and (3) the party seeking the materials has exhausted all other sources for the information." *Id.* at 7–8 (citing *In re Subpoena Duces Tecum to Stearns v. Zulka,* 489 N.E.2d 146, 151 (Ind.Ct.App. 1986)). We conclude that under *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the First Amendment does not create such a privilege, and accordingly, we affirm the order of the trial court.

In *Branzburg,* three newspaper reporters asserted that the First Amendment afforded them a privilege from disclosing to the grand jury information that they had obtained in the course of their investigative reporting. They argued that disclosing confidential facts or sources would deter informants from sharing such information in the future, and would therefore be detrimental to "the free flow of information protected by the First Amendment." *Id.* at 680, 92 S.Ct. at 2656. The Supreme Court rejected this argument, and held that the First Amendment does not grant to news-persons a testimonial privilege that other citizens do not enjoy, and that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." *Id.* at 690–91, 92 S.Ct. at 2661–62.

In so holding, the Court reasoned that there was "no basis for holding that the

1. Zelda's motion also requested that WISH–TV Channel 8, and WRTV–TV Channel 6 be ordered to preserve and produce all such footage. WISH–TV and WRTV–TV are not parties to this appeal.

2. WTHR does not challenge the portion of the order requiring disclosure of the previously aired footage.

3. In a footnote, WTHR acknowledges that the materials sought do not involve the disclosure of a confidential source, but nonetheless asserts that the Indiana Shield Law, Indiana Code section 34–3–5–1, is broad enough to protect WTHR from producing the requested materials. Sec-

tion 34–3–5–1 provides that journalists "shall not be compelled to disclose in any legal proceedings or elsewhere the *source* of any information procured or obtained in the course of his employment...." Ind. Code § 34–3–5–1 (1993) (emphasis added). WTHR presents no argument as to why the statutory privilege should apply in this case, and in light of the clear statutory language we decline to expand the statutory privilege beyond the protection of confidential sources.

4. WTHR draws this three-pronged test from *In re Subpoena Duces Tecum to Stearns v. Zulka,* 489 N.E.2d 146 (Ind.Ct.App.1986).

public interest in law enforcement and ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial." [5] *Id.* at 690–91, 92 S.Ct. at 2661. Further, the Court stated, "[W]e cannot seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of the source, or evidence thereof, on the theory that it is better to write about crime than to do something about it." *Id.* at 692, 92 S.Ct. at 2662. Finally, the Court expressly rejected the claim that the First Amendment provided a conditional privilege that could be overcome by preliminary showings and compelling need, explaining that such a rule would be produce unpredictable results and would be difficult to administer. *Id.* at 702–06, 92 S.Ct. at 2667–69. In light of the Supreme Court's express rejection of the claim that the First Amendment provides news-persons with a privilege to refuse to disclose evidence of a crime, we must reject WTHR's assertion of such a privilege.

Our conclusion is further supported by the Supreme Court's analysis in *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). In *Zurcher*, some demonstrators assaulted police officers during a demonstration at a hospital. A newspaper printed a story covering the incident which indicated that a staff member witnessed and was in a position to photograph the assault on nine of the officers. The police officers obtained a warrant and searched the premises of the newspaper for negatives, films and pictures revealing the identities of demonstrators who had assaulted the officers. The newspaper then brought a civil rights action against the police, the district attorney and one of his deputies, and the judge who had issued the warrant, claiming that the search

of the newspaper premises had "deprived respondents under color of state law of rights secured to them by the First, Fourth, and Fourteenth Amendments of the United States Constitution." *Id.* at 552, 98 S.Ct. at 1974.

In addressing the First Amendment claim, the Supreme Court stated:

Aware of the long struggle between the Crown and the press and desiring to curb unjustified official intrusions, the Framers took the enormously important step of subjecting searches to the test of reasonableness and to the general rule requiring search warrants issued by neutral magistrates. They nevertheless did not forbid warrants where the press was involved, did not require special showings that subpoenas would be impractical, and did not insist that the owner of the place to be searched, if connected with the press, must be shown to be implicated in the offense being investigated. Further, prior cases do no more than insist that the courts apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by the search. As we see it, no more than this is required where the warrant requested is for the seizure of criminal evidence reasonably believed to be on the premises occupied by a newspaper. Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are threatened by warrants for searching newspaper offices.

*Id.* at 565, 98 S.Ct. at 1981–82. The Court reemphasized its statement in *Branzburg* that it was unconvinced "that confidential sources will disappear and that the press will suppress news because of fears of warranted searches. Whatever incremental effect there may be in this regard if search warrants, as well as subpoenas, are permissible in proper

---

**5.** In emphasizing the uncertain burden on the press, the Court noted that "the common law recognized no such privilege, and the constitutional argument was not even asserted until 1958. From the beginning of our country the press has operated without constitutional protection for press informants, and the press has flourished. The existing constitutional rules have not been a serious obstacle to either the development or retention of confidential news sources by the press." *Id.* at 698–99, 92 S.Ct. at 2665.

circumstances, it does not make a constitutional difference in our judgment." *Id.* at 566, 98 S.Ct. at 1982. The Court also stated:

> [S]urely a warrant to search newspaper premises for criminal evidence such as the one issued here for news photographs taken in a public place carries no realistic threat of a prior restraint whatsoever on the publication of the Daily or on its communication of ideas. The hazards of such warrants can be avoided by a neutral magistrate carrying out his responsibilities under the Fourth Amendment, for he has ample tools at his disposal to confine warrants to search within reasonable limits.

*Id.* at 567, 98 S.Ct. at 1982. Thus, the Court, through its willingness to condone searches of newspaper premises, affirmed its previous conclusion that the First Amendment does not afford news-persons a privilege to refuse to disclose evidence of a crime.[6]

Despite these Supreme Court precedents, WTHR asserts that Indiana recognized a First Amendment privilege against disclosure in *In re Subpoena Duces Tecum to Stearns v. Zulka,* 489 N.E.2d 146 (Ind.Ct. App.1986), and that this privilege protects it from disclosing the materials requested by defendant Milam until Milam satisfies the three-pronged test. In light of the Supreme Court's clear statements that a reporter does not have a privilege to withhold evidence relating to a crime, we reject WTHR's assertion that *Zulka* establishes such a First Amendment privilege. Further, the decision in *Zulka* explicitly stated that *Branzburg* had decided the issue with regard to criminal proceedings, and that the question before

them was whether a qualified privilege would be available to a non-party news-gatherer in civil actions. *Zulka,* 489 N.E.2d at 150. We thus decline to extend the *Zulka* holding to a criminal proceeding.

In addition to *Zulka,* WTHR bases its argument in part on the circuit court opinion in *United States v. Cuthbertson,* which held that journalists have a qualified First Amendment privilege not to disclose unpublished information, and that First Amendment interests must be balanced against a defendant's Sixth Amendment and due process rights to determine whether the privilege must yield to the defendant's need for the information in the circumstances of the particular case. 630 F.2d 139, 147 (3d Cir. 1980), *cert. denied sub nom. Cuthbertson v. CBS, Inc.,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). We find the *Cuthbertson* decision unpersuasive in the present case. First, the *Cuthbertson* decision was based in part upon a previous circuit decision holding that journalists have a "federal common-law qualified privilege arising under Fed.R.Evid. 501 to refuse to divulge their confidential sources." 630 F.2d at 146. The case before us does not concern the application or interpretation of the federal rules of evidence.

Second, the *Cuthbertson* decision based its conclusion in part upon the following excerpt from a Supreme Court decision:

> The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other.... [I]f the authors of these guaran-

---

**6.** We also note the decision of Justice White in *New York Times v. Jascalevich,* 439 U.S. 1317, 99 S.Ct. 6, 58 L.Ed.2d 25 (1978). In *Jascalevich,* a newspaper reporter applied to Justice White, as Circuit Justice, for a stay of the state court's order refusing to stay his charge of civil contempt for withholding documents that were subpoenaed by the defendant in a murder trial, and ordered to be submitted for in camera review. Justice White denied the application for a stay, stating:

> There is no present authority in this Court either that newsmen are constitutionally privileged to withhold duly subpoenaed documents material to the prosecution or defense of a criminal case or that a defendant seeking the subpoena must show extraordinary circum-

stances before enforcement against newsmen will be had.

*Id.* at 1322, 99 S.Ct. at 10 (citing *Branzburg,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626; *Zurcher,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525). Although this decision was rendered by only one member of the Court, Justice Marshall in his opinion denying reapplication for a stay in *New York Times v. Jascalevich,* recognized that although he disagreed with Justice White's First Amendment analysis, he could not conclude in good faith that at least four justices would vote to grant a writ of certiorari in the case. 439 U.S. 1331, 99 S.Ct. 11, 58 L.Ed.2d 38 (1978) (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Branzburg,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626).

tees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for us to rewrite the Constitution by undertaking what they declined to do.

*Id.* at 147 (citing *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 561, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976)). The omitted portion of the quote reads: "In this case, the petitioners would have us declare the right of an accused subordinate to their right to publish in all circumstances." *Nebraska Press Assoc.,* 427 U.S. at 561, 96 S.Ct. at 2803. As is indicated by the omitted language, the issue in *Nebraska Press* was whether or not a defendant's Sixth Amendment right to a fair trial before an impartial jury prohibited the press from publishing or broadcasting confessions, admissions or other evidence that strongly implicated the defendant; it did not address the issue of whether a newspaper must disclose evidence relating to a crime to the criminal defendant.

The Supreme Court used the quoted language in analyzing whether or not the defendants rights were sufficient to support a prior restraint of the publication or broadcast of information relating to the crime. As the Supreme Court noted in both *Branzburg* and *Zurcher,* the disclosure of evidence of a crime does not involve an issue of prior restraint. *See Branzburg,* 408 U.S. at 691, 92 S.Ct. at 2661 ("This conclusion itself involves no restraint on what newspapers may publish or on the type or quality of information reporters may seek to acquire....."); *Zurcher,* 436 U.S. at 567, 98 S.Ct. at 1982. Because the Supreme Court recognized the distinction between imposing a prior restraint on the flow of information and requiring disclosure of confidential sources and evidence of a crime, and determined that the latter did not pose a threat to the free flow of information so as to violate the First Amendment, we must do the same.

■ We conclude that the First Amendment does not afford journalists the privilege to withhold from a criminal defendant evidence relating to the crime. The trial court's

order to submit the unaired footage for in camera review is affirmed.

RUCKER and BAKER, JJ., concur.