Otis **PINKARD,** Plaintiff,

v.

Charles **"Cliff" JOHNSON,** etc.; et al., **Defendants.**

Civ. A. No. 87–H–73–E.

United States District Court, M.D. Alabama, E.D.

Oct. 26, 1987.

---

1. Both parties agree that this action is filed against Christensen solely in his role as trustee.

Watkins, Carter & Knight, Donald V. Watkins, Montgomery, Ala., for plaintiff.

Mandell & Boyd, Howard A. Mandell, Montgomery, Ala., for Charles Johnson.

Gray, Langford, Sapp, Davis & McGowan, Fred D. Gray, Tuskegee, Ala., and Rushton, Stakely, Johnston & Garrett, James Garrett, Montgomery, Ala., for McGregor and Macon County Greyhound Park, Inc.

## MEMORANDUM OPINION AND ORDER

HOBBS, Chief Judge.

This cause is now before the Court on the motion to quash the subpoenas issued to a newspaper reporter, Charles Chandler, of the Montgomery Advertiser. Both the plaintiff and the defendants have issued a subpoena duces tecum to Mr. Chandler. However, the scope of the discovery sought by their respective subponeas is different. This motion has raised some interesting questions about the scope of the reporter privilege. The Court determines that Mr. Chandler must respond to the subpoena of the plaintiff and that he is not required to respond to the subponea of the defendants.

### I.

The plaintiff, Otis Pinkard, is the only elected member of a three-person Macon County Racing Commission which is an agency of Macon County, Alabama. This Commission oversees dog racing at Macon County Greyhound Park, a/k/a Victoryland, the only private dog racing track in Macon County. The plaintiff has sued Charles Johnson, Chairman of the Commission, Victoryland, and Milton E. McGregor, President of Victoryland. Plaintiff contends that the defendants conspired to embarrass and harass him by both manufacturing charges that plaintiff sexually harassed female employees of Victoryland and airing these charges at a public meeting of the Commission. Allegedly, this conspiracy was the latest attempt by the defendants to retaliate against the plaintiff for openly challenging and exposing the policies and practices of the Commission and Victoryland. Plaintiff has brought a Section 1983 claim alleging that defendants acted under color of state law in violating his constitutionally protected right to free speech. He has also brought two pendent state claims for defamation and the tort of outrage.

At the time the plaintiff became suspicious of the alleged conspiracy, he contacted his attorney, Ms. Linda Henderson. She began investigating plaintiff's suspicions. On July 4, 1987, she contacted Ms. Betty Robinson to inquire about her knowledge of any retaliatory actions by the defendants. Ms. Robinson allegedly gave Ms. Henderson some information indicating that the defendants had planned to retaliate against plaintiff. Ms. Henderson purportedly reduced this information to affidavit form and sent it to Ms. Robinson for her signature. A week later, Ms. Robinson

reportedly informed Ms. Henderson that she would not sign the affidavit because some pressure had been exerted upon her husband which had upset her. Two weeks later, Ms. Robinson denied having the July 4 conversation with Ms. Henderson.

During her initial investigation on behalf of her client, Ms. Henderson spoke also with Ms. Carla Upshaw. Ms. Upshaw was one of the Victoryland employees who brought complaints of sexual harassment against plaintiff. Ms. Upshaw allegedly told Ms. Henderson that defendant Johnson and an employee of Victoryland had pressured her into giving a written complaint of sexual harassment against plaintiff. Since the inception of this lawsuit, Ms. Upshaw has denied making the statements to Ms. Henderson. Like Ms. Robinson, Ms. Upshaw is employed by Victoryland.

The plaintiff has deposed Ms. Knoxie Wright. She was one of two Victoryland supervisors in charge of the three-month investigation into the complaints lodged against plaintiff, an investigation which coincidently reached fruition after plaintiff had filed a lawsuit in state court against the defendants, alleging that the defendants had wrongfully denied him access to information regarding the Racing Commission and Victoryland. Ms. Wright can remember only two of the names of the six women who she said complained that plaintiff had sexually harassed them. Plaintiff had to seek the assistance of the Court in requiring Ms. Wright to state the names of the women who she recalled as having lodged complaints of sexual harassment against plaintiff.

Defendant Johnson has denied that he understood the nature of the complaints of sexual harassment against plaintiff prior to the public meeting of the Commission at which the charges were aired. Many of the employees of Victoryland also deny any knowledge of the events at issue, thereby contradicting previous statements which they allegedly made.

Initially, Mr. Chandler allowed Ms. Henderson to tape record his statement concerning conversations he had previously with defendant Johnson. He stated that Johnson had approached him prior to a meeting of the Commission. In the course of their conversation, Johnson informed Mr. Chandler that the Montgomery Advertiser should watch for a story about plaintiff that would be disclosed at a future meeting of the Commission. Mr. Chandler has attested that the transcription is an accurate record of the interview.

The plaintiff has subpoenaed Mr. Chandler for a deposition, to which he now objects, asserting his First Amendment reporter privilege. The plaintiff is seeking to depose Mr. Chandler only on the substance of the affidavit he previously gave to Ms. Henderson. The defendants have subpoenaed Mr. Chandler for a deposition and a large amount of records of the Montgomery Advertiser. The defendants argue that the Montgomery Advertiser has been extremely prejudiced against Victoryland and the Commission. In order to prove their assertions, the defendants' discovery requests are much broader than the discovery requests of the plaintiff. Basically, the defendants have requested that the Court give them carte blanche to discover the records, notes, and mental processes of the Montgomery Advertiser and its reporters relating to Victoryland and the Racing Commission.

## II.

Before determining whether Mr. Chandler is entitled to any privilege, the Court must decide whether federal or state law controls the Court's extension of First Amendment protection. In this case, the plaintiff has brought a federal claim based on Section 1983 and two state law claims based on pendent jurisdiction.[1] The evidence sought from Mr. Chandler is relevant to both federal and state claims. In such situations, courts have held consistently that the asserted privileges are governed

---

1. *Cf. Ex parte Sparrow,* 14 F.R.D. 351 (N.D.Ala. 1953) (applying Alabama law in a diversity case).

by the principles of federal law. *See; e.g., Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981).

This approach is consistent with the legislative history of Federal Rule of Evidence 501.[2] *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.1987). The Senate Report which accompanied Fed. R.Evid. 501 stated that "it is also intended that the federal law of privileges should be applied with respect to pendent state law claims when they arise in a federal question case." S.Rep. No. 1277, 93rd Congr., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7059 n. 16.

In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court held that a newspaper reporter had received a *qualified* privilege to be free from mandatory court processes. The qualified nature of the reporter's privilege was dictated by the existence of very strong countervailing policies. On the one hand, the Federal Rules of Civil Procedure provide liberal procedures for compelling testimony and evidence in order to insure the development of facts upon which federal courts can justly decide disputes. *Baker v. F & F Investment*, 470 F.2d 778, 782–83 (2d Cir.1972); *Loadholtz v. Fields*, 389 F.Supp. 1299, 1301 (M.D.Fla.1975). If the Court did not require reluctant persons to participate in the judicial process, litigants would be severely hampered in their presentation of their cases to the Court. The judicial process has a strong interest in discovery which can assist in the development of the truth.

On the other hand, the compelled testimony of newspaper reporters runs afoul of an important societal interest in protecting the free flow of information to the public. Any unwarranted restraints upon the process of newsgathering and reporting could jeopardize the free flow of information to the public. If newspaper reporters are invariably required to reveal the sources of their stories and the processes of their newsgathering whenever such information is sought by litigants, their ability to develop information to report to the public would be severely hampered. Thus, when a court compels the discovery of information received by a newspaper reporter in a newsgathering capacity, it must try to limit such compelled testimony to the extent necessary and consistent with the trial function of presenting the truth. *Miller v. Mecklenburg County*, 602 F.Supp. 675 (W.D.N.C.1985); *United States v. Blanton*, 534 F.Supp. 295 (S.D.Fla.1982). Accordingly, federal courts must strictly scrutinize any requests to employ the court's mandatory processes against newspaper reporters. *Loadholtz v. Fields*, 389 F.Supp. 1299, 1300 (M.D.Fla.1975).

In a concurring opinion in *Branzburg*, Justice Powell emphasized the limited nature of the reporter's qualified privilege. *Branzburg*, 408 U.S. at 709, 92 S.Ct. at 2670. Justice Powell explained that the contours of the privilege must be struck on a case-by-case basis. *Id.* His concurrence ended: "In short, the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection." *Id.* Federal caselaw since *Branzburg* has developed the contours of the reporter privilege in the absence of an instructive federal statute.

In criminal cases, federal courts have generally balanced the competing interests in favor of disclosure. *See, e.g., Baker v. F & F Investment*, 470 F.2d 778 (2d Cir.1972);

---

**2.** The principles by which a federal court determines whether discovery is privileged are set forth in Fed.R.Evid. 501, which provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975). In civil cases, "courts must recognize that the public interest in nondisclosure of journalist's news sources will often be weightier than the private interest in compelled disclosure." *Baker v. F & F Investment Co.,* 470 F.2d 778, 785 (2d Cir.1972).

Federal courts have held generally that the qualified privilege does not apply when the reporter is being questioned about an incident to which he or she may be a witness like any other member of the public. *See, e.g., Miller v. Mecklenburg County,* 602 F.Supp. 675 (W.D.N.C.1985); *Alexander v. Chicago Park Dist.,* 548 F.Supp. 277 (N.D.Ill.1982). In such a case, there is no intrusion into newsgathering or the special functions of the press. *Miller,* 602 F.Supp. at 679.

Federal courts have also examined the type of disclosure requested in balancing the competing interests of a free press and a fair trial. Generally, the more confidential the information sought, the greater the First Amendment protection.[3] *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597, 224 Ct.Cl. 583 (1st Cir. 1980); *Riley v. City of Chester,* 612 F.2d 708 (3d Cir.1979). Thus, if information was given to a reporter on a promise of confidentiality, a court would be more reluctant to compel a betrayal of such a confidence. Such betrayal would tend to prevent the reporter from obtaining information later which he could then pass on to the public. Consequently, the public has a heightened interest where disclosure of confidential information is sought. *Compare Miller v. Mecklenburg County,* 602 F.Supp. 675 (W.D.N.C.1985) *with Miller v. Mecklenburg County,* 606 F.Supp. 488 (W.D.N.C. 1985).

■ Federal courts have also developed an analytical framework for determining whether a reporter is privileged from discovery. In order to invoke the privilege the newspaper reporter must show that he

received the information in dispute while engaged in a newsgathering capacity. *Von Bulow by Auersperg v. Von Bulow,* 811 F.2d 136 (2d Cir.1987). Once the reporter makes this showing, the party seeking disclosure must meet a three part test in order to compel discovery: (1) the information sought must be relevant, (2) the information sought must not be obtainable by alternative means, and (3) there must be a compelling need for the information. *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 726 (5th Cir.1980).

### III.

■ Although in a civil case the evidentiary interests for disclosure are not as strong as in a criminal case, the purpose for which the respective parties seek civil discovery affects the weight given to the policy in favor of disclosure. The plaintiff seeks to depose Mr. Chandler in order to expose the existence of a conspiracy to embarrass and retaliate against the plaintiff. The plaintiff contends that Mr. Chandler's deposition is essential to the vindication of his interests and to expose the falsity of defendants' testimony.

■ Defendants seek to depose Mr. Chandler and the Montgomery Advertiser in order to show the bias and prejudice of the Montgomery Advertiser toward the Racing Commission and Victoryland. To the extent defendants are successful, their discovery will only go to the credibility of Mr. Chandler, and not to the vindication of any right. Thus, given the nature of the interests involved in the respective discovery requests, the policies in favor of disclosure are stronger with regard to plaintiff's discovery request than with regard to defendants' discovery request.

Both of the parties may seek to depose Mr. Chandler on his observations while at public meetings of the Racing Commission. Mr. Chandler is not privileged to the extent the parties' discovery requests go to Mr. Chandler's observations as a witness.

**3.** The Court takes notice of Alabama Code, § 12–21–142 (1949), which codifies the reporter privilege, but only as to confidential "sources of any information." While we are not bound to follow Alabama law, neither should we ignore Alabama's policy of giving protection to confidential "sources of information" obtained by reporters. *Von Bulow,* 811 F.2d at 144.

The nature of plaintiff's discovery request differs from that of defendants. Plaintiff is seeking only to question Mr. Chandler about the content of a conversation he previously had with defendant Johnson. Mr. Chandler has already given plaintiff's attorney a signed affidavit concerning the conversation at issue. The source of the conversation is not confidential, nor is the content of the conversation.

Defendants are asking the Court to license a wholesale fishing expedition into the records, notes, and mental processes of Mr. Chandler, as reporter for the Montgomery Advertiser, without any showing that such an expedition is necessary. For example, defendants would like to question Mr. Chandler on any and all conversations he had with members of the Commission or employees of Victoryland, whether not such conversations related to plaintiff. The defendants have requested any notes or records Mr. Chandler has compiled with regard to either Victoryland or the Commission. The defendants' discovery requests encompass both confidential sources and confidential information. As such, defendants' discovery requests implicate a far greater need for a reporter privilege.

Mr. Chandler has made the requisite showing of newsgathering activity to invoke the qualified reporter privilege with regard to the discovery requests of both parties. The Court finds that plaintiff has met his burden for overcoming the qualified privilege; the defendants have not demonstrated a need to overcome the qualified reporter privilege.

The crux of plaintiff's complaint is that defendants manufactured and orchestrated charges of sexual harassment against him in order to retaliate against him for his opposition to the Commission's policies and practices. The relevancy of plaintiff's discovery request to his complaint is without question. Mr. Chandler has submitted an affidavit to the Court demonstrating the relevancy of his testimony.

The defendants' concern with the discovery and introduction of this evidence at trial is understandable. If Mr. Chandler is compelled to testify, defendants may wish to attack Mr. Chandler's credibility. To achieve this purpose, defendants have requested the aid of this Court in discovery. While relevant, defendants' purpose is collateral to the main issues of the case. Furthermore, defendants' discovery would result in a trial within a trial.

The plaintiff has been unable to obtain evidence from other sources to support his charges. To date, plaintiff has deposed only employees and affiliates of the defendants. Discovery of these individuals has yielded inconsistent and unsupportive evidence. In contrast, defendants should have no difficulty in showing the prejudice of the Advertiser from its published articles and other less intrusive sources. Absent a showing of any attempt by defendants to obtain this information through other channels, the Court sees no reason to license a fishing expedition into the confidential newsgathering and editorial processes of the Montgomery Advertiser.

This case is unusual in that a newspaper reporter, after initially disclosing information revealed in a conversation, is seeking to withdraw behind the shield of First Amendment protection. A disturbing aspect of this change of position is that a local law firm was simultaneously representing both the defendants and Mr. Chandler. Defendants have taken altogether inconsistent positions on this issue. As a first line of argument, defendants assert Mr. Chandler is privileged from plaintiff's discovery requests. If the Court finds that Mr. Chandler is not privileged, the defendants ask the Court to open "Pandora's box" and give them an opportunity to prove the bias and false reporting of the Advertiser.

The defendants have not demonstrated a compelling need to have the notes and records of Mr. Chandler and the Montgomery Advertiser produced and to depose Mr. Chandler with regard to any and all conversations he may have had with the defendants and their employees. The defendants' discovery requests do not go to the "heart" of the case. The defendants have not attempted to prove their allegations through other sources. The plaintiff has demonstrated a compelling need to depose Mr. Chandler concerning the substance of a conversation about which Mr. Chandler has

submitted an uncoerced affidavit to plaintiff's attorney.

Both parties are entitled to depose Mr. Chandler concerning the substance of a conversation about which he has already submitted a signed affidavit. On August 11, 1987, Mr. Chandler voluntarily submitted to a taped interview concerning the conversation he had with defendant Johnson. Through this action, the Court finds that Mr. Chander waived his qualified reporter privilege with regard to this conversation. A reporter is not free to give a sworn statement to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court. However, Mr. Chandler has waived his qualified reporter privilege only as to matters relating to the conversation he had with defendant Johnson a few weeks prior to December 3, 1986.

## IV.

In accordance with this opinion, the Court hereby orders Mr. Chandler to comply with the subpoena of the plaintiff. The scope of the subpoenaed deposition is limited to any events Mr. Chandler witnessed at the Macon County Racing Commission meeting of December 3, 1986 and the conversation about which Mr. Chandler has submitted an affidavit. The subpoena duces tecum issued to Mr. Chandler by defendants is hereby denied.