**Elizabeth F. MAY, Plaintiff,**

v.

**Kenneth COLLINS, Paula Buickel, Rich Reed and Vanderburgh County, Defendants.**

**No. EV 83–330–C.**

United States District Court, S.D. Indiana, Evansville Division.

July 29, 1988.

**536**

Vernon J. Petri, Thomas R. Ruge, Indianapolis, Ind., for plaintiff.

Bowers, Harrison, Kent & Miller, Evansville, Ind., for defendants Vanderburgh County and Rich Reed.

David L. Jones, Evansville, Ind., for defendants Collins & Buickel.

## ORDER

BROOKS, Chief Judge.

This matter comes before this Court pursuant to third parties, Roberta Heiman, Catherine Edman and Dave Lucas, by and through The Evansville Courier (hereinafter the movants or "Courier") Motion to Quash a Subpoena Duces Tecum served upon them by the defendants, Kenneth Collins and Paula Buickel.

This case involves a claim brought by Elizabeth F. May (hereinafter plaintiff) against Vanderburgh County, Kenneth Collins and Paula Buickel (hereinafter the defendants) which seeks damage to redress alleged deprivations by the defendants of plaintiff's rights under the Constitution and laws of the United States and the State of Indiana. This action is brought pursuant to Sections 1983 and 1988 of Title 42 of the United States Code.

It is plaintiff's contention that on or about September 3, 1982 she was subjected to an illegal strip search by defendant, Paula Buickel, who was a matron employed by the Vanderburgh County Jail, after an arrest for operating a motor vehicle while intoxicated. Furthermore, it is plaintiff's contention that defendant, Kenneth Collins, who was employed by the Vanderburgh County Jail, used excessive force which was unwarranted and unjustified by law, thereby twisting plaintiff's arm behind her back, causing a fracture which resulted in serious physical injury, pain and suffering.

It is plaintiff's position that the acts and omissions of the defendants herein constituted a deprivation of her constitutional rights, privileges and immunities.

Plaintiff contends that defendants jointly and severally acted under color of their official capacities and that such acts were performed under color of the statutes, ordinances, customs and usages of the County of Vanderburgh and the State of Indiana. It is plaintiff's contention that these acts carried out under color of law had no justification or excuse in law and were instead illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons or property or ensuring civil order.

The defendants, Vanderburgh County, Collins and Buickel, deny the allegations and assert the following affirmative defenses:

1. The injuries incurred by the plaintiff were a result of her own intentional conduct and that such injuries were proximately caused by her own negligent conduct.

2. The defendants have absolute immunity from liability for the performance of discretionary functions and the enforcement of the law.

3. The defendants acted in their official capacities as officers, agents and employees of defendant, Vanderburgh County, and within the scope of their respective employment and duties.

4. Defendants performed said duties in good faith and their conduct was at all times reasonable and proper.

5. The claim for punitive damages is barred by virtue of the Indiana Code.

6. Plaintiff's claim exceeds the statutory maximum.

7. Plaintiff's negligence claim is barred by Indiana Code.

8. Defendants, Collins and Buickel, acting in the scope of their authority and pursuant to law, have qualified immunity from any liability.

This matter is set for trial on August 8, 1988. The Evansville Courier, which is a daily newspaper with a morning circulation in Southern Indiana, Western Kentucky and Eastern Illinois, ran a series of articles which focused on the Vanderburgh County Jail, its conditions, policies and practices, all of which are subjects relevant to this litigation. These articles were researched and written severally and jointly by Roberta Heiman and Catherine Edman, both of whom are reporters employed by the Evansville Courier. Dave Lucas is a photographer employed by the Evansville Courier. Lucas took the photographs which accompanied the articles run in the Courier on the Vanderburgh County Jail.

On July 22, 1988 the plaintiff filed an Addendum to Witness List which named these two reporters and the photographer as witnesses to be called by the plaintiff. Subsequently, the defendant, Kenneth Collins and Paula Buickel, served a Subpoena Duces Tecum which compelled a deposition of the reporters Heiman and Edman and photographer Lucas at the offices of the attorney for the defendants, Collins and Buickel, on July 27, 1988. The witnesses were commanded to bring to the deposition the following documents or objects:

> "All notes, documents or tangible items which relate to your testimony on behalf of the plaintiff in Elizabeth May v. Vanderburgh County et al, Cause No. EV 83–330–C (attached to exhibit 'A' is addendum to plaintiff's witness list)."

Heiman, Edman and Lucas, by and with their employer, the Evansville Courier, move to Quash the Subpoenas served upon them. The movants contend that they cannot be compelled to disclose in this or any other legal proceeding the source of any information procured or obtained by them in the course of their employment or representation of Courier. It is the movants' position that the subpoenas served upon them seek information which will, of necessity, involve the disclosure of sources of information obtained by these reporters in the course and scope of their employment. The movants indicate they will invoke the absolute privilege in regards to their undisclosed sources pursuant to Indiana Code 34–3–5–1 (Indiana Shield Law). The movants further indicate that the information itself enjoys a qualified privilege under Indiana law unless the defendant makes a prior showing that there is a compelling need for the information sought.

A hearing was held on the Motion to Quash in open Court on July 26, 1988. All parties were heard. The movants established by Roberta Heiman's testimony, which was elicited during the hearing from the stand, that she and Catherine Edman researched and co-authored the articles which appeared in the Courier. Heiman established that all those subpoenaed were employees of the Courier and that the information contained in the articles was obtained by these reporters in the course and scope of their employment. Heiman indicates that the articles written quote people and attribute the authors of those quotes which were not given in confidence. Heiman further indicates that notes and other writings exist as to the research in which these articles were based. Furthermore, Heiman admits that her entire article was not published because of its length, and such alterations were at the hands of her editor. Edman was unavailable at this hearing due to the fact she was on medical leave. Counsel for the reporters, as well as Heiman herself, stated on the record that they intend to assert their privileges to the fullest extent at both the defendants' proposed deposition and at trial, if called by the plaintiff. The reporters, however, contend that they can neither be compelled to appear at the deposition or trial unless the party seeking testimony shows that there is a compelling need for the information sought.

The movant relies on Indiana Shield Law, I.C. 34–3–5–1, which provides:

> "Any person connected with, or any person who has been so connected with or

employed by, a newspaper or other periodical issued at regular intervals and having a general circulation, or a recognized press association or wire service, as a bona fide owner, editorial or reportorial employee, who receives or has received income from legitimate gathering, writing, editing and interpretation of news, and any person connected with a licensed radio or television station as owner, official, or as an editorial or reportorial employee who receives or has received income from legitimate gathering, writing, editing, interpreting, announcing or broadcasting of news, shall not be compelled to disclose in any legal proceedings or elsewhere the source of any information procured or obtained in the course of his employment or representation of such newspaper, periodical, press association, radio station, television station, or wire service, whether published or not published in the newspaper or periodical, or by the press association or wire service or broadcast or not broadcast by the radio station or television station by which he is employed."

■ It is important to note that before this Court can decide whether the movants are entitled to any privilege, this Court must decide whether Federal or State law controls the Court's extension of First Amendment protection. *Pinkard v. Johnson,* 118 F.R.D. 517 (M.D.Ala.1987). In this case the plaintiff has unequivocally brought a federal claim based on Sections 1983 and 1988 of Title 42 of the United States Code.

Accordingly, there is a very strong argument that Federal law should apply. However, since this case was brought before the Federal District Court the Federal Rules of Evidence must be considered. Rule 501 of the Federal Rules of Evidence provides:

"Except as otherwise required by the Constitution of the United States or provided by act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."

The Notes of the Committee on the Judiciary Senate Report No. 93–1277 with respect to Rule 501 provides that State law be applied in "diversity" cases (actions on questions of State law between citizens of different States arising under 28 U.S.C. § 1332) where the litigation in question turns on a substantive question of state law, and is brought in the federal courts. The Committee believed that in such cases it was clear that state rules of privilege should apply. Furthermore, it is the Committee's belief that in criminal and federal question civil cases, federally evolved rules on privilege should apply since it is a federal policy which is being enforced.

Based on the fact this action is a non-diversity case and a federal claim based on Sections 1983 and 1988, it is this Court's opinion that the asserted privileges are governed by the principles of federal law.

■ Federal courts have always recognized that the protection of the identity of sources is often essential to the willingness of these sources to give information to the press, and thus contribute to the "marketplace of ideas," a concept fundamental to our political system. See, *e.g., Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

This Court acknowledges that compelling testimony of newspaper reporters runs afoul of an important societal interest in protecting the free flow of information to the public.

"Any unwarranted restraints upon the process of newsgathering and reporting

could jeopardize the free flow of information to the public. If newspaper reporters are invariably required to reveal the sources of their stories and the process of their newsgathering wherever such information is sought by litigants, their ability to develop information to report to the public would be severely hampered." *Pinkard v. Johnson*, 118 F.R.D. 517 (M.D.Ala.1987).

However, this Court cannot wholly discount the Federal Rules of Civil Procedure which provide liberal procedures for compelling testimony and evidence in order to insure the development of facts upon which federal courts can justly decide disputes. *Baker v. F & F Investment*, 470 F.2d 778 (2nd Cir.1972); *Loadholtz v. Fields*, 389 F.Supp. 1299 (M.D.Fla.1975).

Accordingly, as *Pinkard* held:

"If the court did not require reluctant persons to participate in the judicial process, litigants would be severely hampered in their presentation of their cases to the Court. The judicial process has a strong interest in discovery of the truth. As such, when a court compels discovery of information received by a newspaper reporter in a newsgathering capacity, it must try to limit such compelled testimony to the extent necessary and consistent with the trial function of presenting the truth." *Miller v. Mecklenburg County*, 602 F.Supp. 675 (W.D.N.C.1985); *United States v. Blanton*, 534 F.Supp. 295 (S.D. Fla.1982).

The strong public policy which supports the unfettered communication to the public of ,information, comment and opinion and the constitutional dimension of that policy, were expressly recognized in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed. 2d 626 (1972), where the Supreme Court firmly established that there is no absolute privilege conferred upon newsmen by the First Amendment to refuse to reveal their sources of information in legal proceedings in which they are subpoenaed. Accordingly, it is of critical importance in these cases to note and bear in mind that the main purpose of the judicial system is a search for the truth. This search must be flexible

in order to accommodate itself to the needs of our times and the needs of an individual case. In such circumstances, the Court is called upon to fashion a remedy consistent with the ends of justice. In proceeding to form a remedy in the instant case, this Court remains ever aware of Mr. Justice Powell's concurring opinion in *Branzburg v. Hayes*, in which he stated:

"The asserted claim to privilege should be judged on its facts by the striking of the proper balance between freedom if the press and the obligation of all citizens to give relevant testimony.... The balance of these vital constitutional and societal interests on a case by case basis accords with the tried and traditional way of adjudicating such questions." *Id.* at 709–710, 92 S.Ct. at 2670–71.

It is important to note that the *Branzburg* opinion dealt specifically with criminal proceedings. However, as was noted in *Altemose Construction Co. v. Building & Construction Trades Council*, 443 F.Supp. 489 (E.D.Pa.1977):

"Such a case-by-case analysis is mandated even more in civil cases than in criminal cases, for in the former the public interest in casting a protective shroud over the newsmen's sources and information warrants an even greater weight than in the latter."

The newsgatherer's privilege has been often litigated in courts over the past years and as a result of the controversy many states, including Indiana, have passed shield laws which in general provide an absolute privilege against revealing confidential sources of information procured in the course of employment for a news reporting entity. *Subpoena Duces Tecum to Stearns v. Zulka*, 489 N.E.2d 146 (Ind.App. 3 Dist.1986); citing *Jamerson v. Anderson Newspapers, Inc.*, 469 N.E.2d 1243 (Ind. App.1984). This Court appreciates Indiana's interests expressed in their statute which grants absolute immunity. The interests behind the Indiana statute and the federal common law in this regard are congruent, each stemming from an independent base of authority but both leading to protection of the vital communication

role played in a free society. See *Riley v. City of Chester,* 612 F.2d 708 (3rd Cir. 1979). Although this Court is not bound to follow the Indiana law, it refuses to ignore the public policy expressed which gives newspaper reporters protection from divulging their sources. This refusal is based on the fact that there is a desire to promote the constitutional policy of free speech, which is protected by the First Amendment, and an equal desire to accommodate the rights of litigants to procure evidence in civil litigation. Accordingly,

"When a privilege is grounded in constitutional policy, a 'demonstrated, specific need for evidence' must be shown before it can be overcome." *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

Therefore, this Court must balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand. *Riley v. City of Chester,* 612 F.2d at 716. The privilege recognized in *Riley* involved only protection of confidential sources. However, this privilege has been extended to unpublished material regardless of the confidentiality of the source.

"The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes. Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege. See *Riley v. City of Chester, Supra.* Therefore, we hold that the privilege extends to unpublished materials...." *United States v. Cuthbertson,* 630 F.2d 139 (3rd Cir.1980).

In summary, it is this Court's opinion that journalists possess a qualified privilege not to divulge confidential sources and not to disclose unpublished information which was in their possession gathered as a result of the newsgathering process. Because this privilege is qualified, there may be countervailing interests that will require

it to yield in a particular case, *Riley v. City of Chester,* 611 F.2d at 715, and the district court must balance the defendant's need for the material against the interests underlying the privilege to make this determination.

■ This Court recognizes the analytical framework developed by Federal Courts for determining whether a reporter enjoys the qualified privilege from discovery.

"In order to invoke the privilege the newspaper reporter must show that the information in dispute was received while engaged in a newsgathering capacity." *Von Bulow by Auersperg v. Von Bulow,* 811 F.2d 136 (2d Cir.1987).

It is this Court's opinion that the movants have established that such information sought was received during the newsgathering process. Accordingly, when a nonparty newsgatherer invokes this privilege,

"the burden shifts to the discovering party to establish all elements of the following three part test:

(a) the material sought is highly relevant,

(b) there is a compelling need for the information sufficient to override the First Amendment privilege, and

(c) the party has been unsuccessful in securing the information from other sources."

*Subpoena Duces Tecum to Stearns v. Zulka,* 489 N.E.2d 146 (Ind.App. 3 Dist. 1986); *Pinkard v. Johnson,* 118 F.R.D. 517 (M.D.Ala.1987).

The movants contend that they can neither be compelled to appear at the deposition or trial unless the party seeking the testimony shows that such information meets the aforecited three part test.

Neither defendants nor plaintiff dispute the existence of the privilege. Instead, they argue that they are entitled to the deposition, and if and when questions are asked which are privileged, that is when the reporters should assert their privilege.

This case perhaps would have been clearer had it come before this Court pursuant to a Motion to Quash plaintiff's subpoena compelling the reporters to testify at the

trial. This would have been logical since the plaintiff listed the movants as witnesses on July 22, 1988. None of the defendants express a desire to call the movants as witnesses at trial. As it stands, defendants, by issuing the subpoena and scheduling a deposition, are simply trying to discover what might be testified to at trial in an effort to avoid being subjected to trial by ambush.

Based on arguments in Court, however, it appears evident that the reporters are not allies of plaintiff. Plaintiff's purpose in naming them in her witness list appears to be based solely on the contents of the recent series of articles. There have been no conversations between plaintiff and the reporters, and the reporters have expressed their intent to assert their privilege to its fullest extent regardless of who is seeking their testimony.

This Court holds that, with the exception of what is already actually in print, the reporters cannot be compelled to give any testimony until the party seeking the testimony has met the three part test. Since there would be no purpose for a deposition under these circumstances except to have the reporters read their articles, the deposition appears pointless except to determine what part of each article was written by which reporter, and for the reporters to verify the accuracy of what was printed. Thus, the Court ORDERS that the reporters' Motion to Quash is GRANTED, except for those limited purposes. Since these questions could easily be established in a less intrusive manner than by deposition, the Court, with respect for the First Amendment, STAYS the deposition until August 3, 1988 to give the parties an opportunity to discover this information by other means.

Further, due to the unusual procedural posture that has brought this case to this Court, the Court finds it necessary to provide an additional Order. A Protection Order is GRANTED to defendants preventing plaintiff from eliciting any testimony from the reporters at trial other than the actual content of the articles, who wrote which portion of that article, and any testimony which plaintiff can establish meets the three part test.

IT IS SO ORDERED.