**Rose M. SANDERS, Plaintiff,**

v.

**ALABAMA STATE BAR, et al., Defendants.**

**Civ. A. No. 94–D–152–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 25, 1995.

J.L. Chestnut, Jr., Rose Mary Sanders, Marvin W. Wiggins, Yusuf A. Salaam, Roxanne J. Gregory, Chestnut, Sanders, Sanders & Pettaway, Selma, AL, for plaintiff.

James Anthony McLain, Montgomery, AL, for Alabama State Bar and Gilbert Kendrick.

George Lamar Beck, Jr., Montgomery, AL, for John Yung.

## ORDER

CARROLL, United States Magistrate Judge.

### I.  FACTS

In December, 1990, the plaintiff, Rose M. Sanders, engaged in protests against both the treatment of African–American children and poor Caucasian children by the Selma public school system, and against the holding of secret meetings by the Selma City Board of Education.  Complaints were filed against Sanders with the Alabama State Bar, and she was privately reprimanded.  In February, 1992, an article in the *Montgomery Advertiser* referred to this private reprimand and other private documents concerning Sanders' disciplinary proceedings, and made other negative allegations against Sanders. The article named John Yung and Gilbert Kendrick, defendants in this case, as State Bar sources.  In September, 1993, more disciplinary proceedings were commenced against Sanders based on the amount of a fee she charged a client for services.  All of these actions form the basis of Sanders' lawsuit.

### II.  PROCEDURAL HISTORY

On February 9, 1994, Rose Sanders filed this action against the Alabama State Bar, Gilbert Kendrick, Assistant General Counsel of the Alabama State Bar, and John Yung, a licensed attorney in Alabama, and the former Assistant General Counsel of the Alabama State Bar (from 1980–1991).  She alleged that her First, Fifth, and Fourteenth Amendment rights were violated because the defendants subjected her to a public censure (the *Montgomery Advertiser* article) without due process of law, and because she was denied equal protection of the law based on her race and political activity.  She also alleged that the defendants invaded her privacy rights by taking unfair disciplinary action against her and by releasing confidential proceedings to the press;  that they intentionally inflicted emotional distress upon her;  and that they were negligent.

On April 1, 1994, Sanders amended her complaint to add two further claims under 42

U.S.C. § 1983; first, that the defendants violated her First Amendment rights by releasing confidential information about her to the media, and second, that the State Bar formally prosecuted unjust and frivolous bar charges against her. She also alleged that the defendants violated 42 U.S.C. § 1981 in that these actions were taken because of the plaintiff's race.

Sanders claimed that the defendants further violated 42 U.S.C. § 1981 by failing to prosecute her bar charges against defendants Kendrick and Yung because of Sanders' race. In addition, Sanders alleged that the defendants breached a contract by releasing confidential information, prosecuting frivolous complaints against her, and retaliating against Sanders because she filed bar charges against the defendants. Further, Sanders claimed that the State Bar breached a duty it owed to her to supervise its employees to prevent disclosure of confidential information about her and to prevent retaliation against her.

During the course of discovery in this case, Sanders served a subpoena on Alvin Benn, the reporter from the *Montgomery Advertiser* who had written the February, 1992 article about Sanders. The plaintiff issued this subpoena to help prove that Yung and Kendrick released confidential bar proceedings to the press. The subpoena required Mr. Benn to appear on January 6, 1995, at 12:00 p.m. at the Alabama Bar Association and to produce:

> Copies of all notes, tapes and documents relative to conversations with members, employees or agents of the Alabama State Bar regarding bar charges against Rose M. Sanders pertaining to her involvement in the Selma School crisis in 1989–1991, etc. Produce the unedited writing of the attached articles. Produce all communications and writings, including anonymous letters, notes, and tapes of voice mail that relate to stories you wrote about Rose M. Sanders from December, 1989 through December, 1992.

The Advertiser Company (the Advertiser), publisher of the *Montgomery Advertiser*, responded with a Motion to Quash the subpoena based on a First Amendment qualified reporter privilege. Sanders filed a Brief in Opposition to Defendant's Motion to Quash, and the court heard oral arguments on January 20, 1995. After full consideration of the pleadings filed by Sanders and the Advertiser, this court finds that the Motion to Quash is due to be denied.

## III. DISCUSSION

■ The qualified reporter privilege, established by the United States Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), allows reporters to be free from disclosing information about sources during certain court processes. Courts have recognized this privilege because of society's interest in the First Amendment guarantee of freedom of the press. People will more freely give information to reporters on a promise of confidentiality when they know that such a promise will not be broken. This trust that reporters can establish with informants leads to the free flow of information to the public. A betrayal of such a confidence between a reporter and his source could undermine the First Amendment's protection of free press. *Id.*

On the other hand, an equally compelling constitutional concern is the right to a fair trial. It is difficult, and often impossible, to establish the elements of one's case when the necessary information is concealed behind a privilege. "If the Court did not require reluctant persons to participate in the judicial process, litigants would be severely hampered in their presentation of their cases to the Court. The judicial process has a strong interest in discovery which can assist in the development of the truth." *Pinkard v. Johnson*, 118 F.R.D. 517, 520 (M.D.Ala.1987).

■ These two competing interests are at stake when the reporter privilege is raised, and the interests must be balanced against each other to determine which is more compelling in a specific case. The Eleventh Circuit follows a standard established to determine when information protected by a qualified reporter privilege should be made public. First, the reporter must show that he received the information in dispute while engaged in a newsgathering capacity. Both sides agreed during oral argument that reporter Benn was engaged in a

newsgathering capacity when he talked with Kendrick and Yung. Since this fact has been established, the burden shifts to the party seeking disclosure to meet a three part test: (1) the information sought must be relevant; (2) the information sought must not be obtainable by alternative means; and (3) there must be a compelling need for the information. *Miller v. Transamerican Press*, 621 F.2d 721 (5th Cir.1980); *see United States v. Caporale*, 806 F.2d 1487 (11th Cir.1986); *see also Pinkard v. Johnson*, 118 F.R.D. at 521.

 This court finds that the plaintiff has met her burden. First, the information sought from Benn is relevant to the case. Sanders seeks this information to establish, among other things, that her privacy was invaded. Under Alabama law, an invasion of privacy is "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Wright v. Wright*, 654 So.2d 542 (Ala. 1995) (citing *Phillips v. Smalley Maintenance Servs.*, 435 So.2d 705 (Ala.1983)). In order for Sanders to prove this claim, she needs to know whether there has been an intrusion into her private activities; namely, whether counsel for the State Bar disclosed her private reprimands to the media. The information sought in the subpoena is clearly relevant to this issue.

Sanders has also satisfied the second part of the test—that the information sought is not obtainable by alternative means. The only people who can testify about what transpired between reporter Benn and counsel for the State Bar, Yung and Kendrick, are those three individuals. Yung and Kendrick have both filed affidavits stating that they did not disclose information to Benn regarding Sanders' private reprimand. Thus, the only person left who can shed light on this matter is reporter Benn.

Finally, Sanders has met the third part of the standard—that there is a compelling need for the information. As stated above, without this information, Sanders cannot prove her invasion of privacy claim. Indeed, this information goes to the heart of Sanders' case.

## IV. CONCLUSION

Referring to the reporter privilege, the Supreme Court stated, "[E]videntiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979). Under the circumstances of this case, the reporter privilege must give way. Sanders has met her burden, and is entitled to receive the information requested in the subpoena.[1]

For the foregoing reasons, the Motion to Quash is DENIED. Alvin Benn is hereby ORDERED to appear at a deposition at a time mutually agreed upon by counsel for the parties, Mr. Benn, and his counsel.

---

1. Counsel for the Advertiser has represented to the court that there are no documents in existence which are responsive to the subpoena.